## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

```
*********************************************
In Re:                                      *
                                            *   Chapter 7
    Walter J. Dunfey, II,                   *
                                            *   Case No. 03-10819-MWV
                                            *
                     Debtor                 *
*********************************************
Michael S. Askenaizer, Trustee,             *
                                            *
                     Plaintiff              *
v.                                          *   Adversary No. _____
                                            *
Walter J. Dunfey, II,                       *
                                            *
                     Defendant              *
                                            *
*********************************************
```

## **OBJECTION TO DISCHARGE**

**NOW COMES** Michael Askenaizer, in his capacity as Trustee for the Bankruptcy Estate of Walter J. Dunfey, II, and objects to the entry of an order of discharge, and in support thereof says as follows:

1.   The Plaintiff is the duly appointed Chapter 7 Trustee in the above-captioned proceeding having been appointed by Order of this Court dated March 17, 2003.

2.   The Plaintiff's place of business is 60 Main Street, Nashua, New Hampshire 03060.

3.   The Defendant, Walter J. Dunfey, II, is the Debtor in the these proceedings with a mailing address at P.O. Box 664, Portsmouth, New Hampshire 03802-0664.

4. The United States District Court for the District of New Hampshire has jurisdiction over this matter as a matter arising under Title 11 of the United States Code. 28 USC §1334(c). Venue is appropriate in the District of New Hampshire as this matter arises in or relates to a case commenced in this district. 28 USC §1409(a).

5. This matter has been referred by the United States District Court for the District of New Hampshire to this Bankruptcy Court pursuant to the Order of the United States District Court for the District of New Hampshire dated January 18, 1994 as of November 12, 1993 captioned "In Re: Referral of Title 11 Proceedings for the United States Bankruptcy Judges for this District."

6. This matter is a core proceeding in which this Bankruptcy Court has jurisdiction to enter final orders and rulings. 28 USC §157(b)(2)(J).

## BACKGROUND FACTS

7. On or about January 1, 2002 Walter J. Dunfey, II, the Debtor in these proceedings, was the owner of assets and businesses including the following: Mr. Dunfey owned the business known as Portsmouth Harbor Cruises, Inc.; the business known as Dunfey Marine Enterprises, Inc.; the boat known as the John Wanamaker; and a house located in Rye, New Hampshire.

8. The business known as Portsmouth Harbor Cruises, Inc. owned a boat which provided tours of the harbor to tourists.

9. The business known as Dunfey Marine Enterprises, Inc. owned a restaurant located upon the boat known as the John Wanamaker which restaurant was called Dunfey's Upon the John Wanamaker.

10. The John Wanamaker was a tug formerly known as the Edward Fitzgerald

which had been outfitted to operate as a restaurant.

11. Some time before January 1, 2002, Mr. Dunfey met Robert "Bobby" Wallace. During the course of his involvement with Mr. Wallace, Mr. Dunfey caused monies to be paid from Dunfey Marine Enterprises, Inc. to others at Mr. Wallace's behest.

12. At all relevant times, Mr. Dunfey was in deep financial difficulty. Mr. Dunfey from January 1, 2002 forward was having difficulty paying his bills or the bills of his businesses.

13. At some time during the course of his association with Mr. Wallace, Mr. Dunfey came to believe that Mr. Wallace was associated either with organized crime, or with persons who might be described as criminal elements.

14. Throughout a significant portion of 2002, Mr. Dunfey was in arrears on the rent with respect to the dock where the John Wanamaker tugboat was located.

15. As a result of the arrearage, Dunfey Marine Enterprises, Inc. was sued by U.S. Property Investment Funds, LLC, the Landlord.

16. During the first half of the year 2002, Mr. Dunfey and Dunfey Marine Enterprises, Inc. were in arrears to Key Bank. Key Bank held a lien on all of the assets of Dunfey Marine Enterprises, Inc., and the John Wanamaker.

17. Some time in the summer of 2002, Key Bank was threatening to foreclose on the John Wanamaker. To forestall the foreclosure, Mr. Dunfey needed money.

18. In March of 2002, Andrew Cole, an employee of Portsmouth Harbor Cruises, Inc. sued Mr. Dunfey and Portsmouth Harbor Cruises, Inc. for the repayment of monies loaned.

19. In June and early July of 2002, Mr. Dunfey entered into an agreement with Mr. Cole to settle the lawsuit brought by Mr. Cole against Mr. Dunfey by selling the business known as the Portsmouth Harbor Cruises to Mr. Cole for $195,000.00.

20. Mr. Cole agreed to pay the sum of $195,000.00 to Mr. Dunfey. Mr. Cole gave to Mr. Dunfey the sum of $25,000.00 as a down payment upon the purchase by Mr. Cole of the business of Portsmouth Harbor Cruises, Inc.

21. Mr. Dunfey did not take the $25,000.00. Instead, Mr. Dunfey delivered the $25,000.00 to Bobby Wallace. On information and belief, the reason that Mr. Wallace received the transfer of money from Mr. Dunfey was to hinder, delay or defraud creditors.

22. Mr. Dunfey caused the $25,000.00 to be paid to Mr. Wallace on information and belief so that the $25,000.00 would not be in Mr. Dunfey's bank account, and therefore liable to attachment by creditors.

23. On information and belief, Mr. Dunfey caused the $25,000.00 to be paid to Mr. Wallace so that Mr. Wallace could offer the same to Key Bank in release of the liens that Key Bank held upon the John Wanamaker.

24. On information and belief, a portion of the scheme between Mr. Wallace and Mr. Dunfey was that Mr. Wallace would appear to Key Bank to be the owner of the $25,000.00, and, therefore, Key Bank would be more likely to release the lien upon the vessel to Mr. Wallace as a third party then it would be to release the lien on the vessel to Mr. Dunfey as the owner and debtor and person obligated to Key Bank .

25. On information and belief, in fact, Key Bank released the lien upon the John Wanamaker.

4

26. On information and belief, Mr. Dunfey engaged in a scheme with Mr. Wallace at a time when Mr. Dunfey believed that Mr. Wallace was associated in some fashion with organized crime or criminal elements.

27. On or about July 22, 2002, Mr. Dunfey closed on the sale of the assets of Portsmouth Harbor Cruises to Mr. Cole. As a result of that sale, Mr. Dunfey received a certified check in the amount of $90,000.00.

28. On or about July 23, 2002, Mr. Dunfey opened a bank account at Bank of New Hampshire into which he deposited the check in the sum of $90,000.00.

29. On or about July 24, 2002, Mr. Dunfey cashed a check on that account in the amount of $89,900.00.

30. On information and belief, Mr. Dunfey received in exchange for that cashed check, 891 $100.00 bills.

31. Mr. Dunfey's testimony at the 341 meeting was that he handed that $89,100.00 in cash to Bobby Wallace.

32. Mr. Dunfey has retained no records of the transfer to Mr. Wallace that have been delivered to the Trustee.

33. Mr. Dunfey has maintained no records of debt due to Mr. Wallace that have been delivered to the Trustee.

34. Mr. Dunfey has not explained where the $89,100.00 is today.

35. Mr. Dunfey variously asserts that Mr. Wallace was to use the money to keep the Dunfey's Aboard the John Wanamaker in operation, and, also inconsistently, that if he did not pay the money to Mr. Wallace, then Mr. Wallace had threatened various forms of bodily injury against persons whom Mr. Dunfey cared about.

36. Shortly thereafter the Dunfey's Aboard the John Wanamaker closed.

37. Mr. Dunfey has not produced business records for the Dunfey's Aboard the John Wanamaker for the year 2002 or the year 2001, excepting only bank statements.

38. At the time that the $89,100.00 was delivered by Mr. Dunfey to Mr. Wallace, Mr. Dunfey was in deep financial difficulties having been sued by a number of creditors, including a divorce proceeding by his current wife and enforcement proceedings by an ex-wife.

39. Mr. Dunfey has been unable to produce any records whatsoever of the use by Mr. Wallace of the $89,100.00 towards payment of Mr. Dunfey's creditors.

40. By the middle of the summer of 2002, Mr. Dunfey was the subject of attachments by the at least the following creditors: Mr. Cole; Ms. James, his ex-wife; Key Bank; and U.S. Property Investment Funds, L.P..

41. On or about October 16, 2002, Mr. Dunfey entered into an agreement both individually and on behalf of Dunfey Marine Enterprises, Inc. with South Coast Express, Inc. for the sale of the John Wanamaker for the sum of $60,000.00.

42. At the time that Mr. Dunfey had entered into that transaction, he knew or reasonably should have known, that his landlord, U.S. Property Investment Funds, L.P. (hereinafter the "Landlord") considered the vessel as the primary source of its likely recovery.

43. At the time that he entered into the purchase and sale agreement, Mr. Dunfey knew or reasonably should have known that he had theretofore informed the Landlord that Dunfey Marine Enterprises, Inc. was the owner of the vessel.

44. On or about November 12, 2002, Dunfey executed a bill of sale individually conveying the boat known as the John Wanamaker to South Coast Express, Inc. In exchange for that bill of sale, South Coast Express, Inc. agreed to pay Mr. Dunfey the sum of $60,000.00.

45. On or about November 13, 2002, and before payment had been made or the boat delivered, the landlord obtained an expanded attachment to specifically include the boat.

46. In an apparent attempt to make sure that the money from the boat went to Bobby Wallace rather than to anybody else, Mr. Dunfey executed a bill of sale and has since produced two different Exhibits A to the bill of sale. One of the Exhibits A to the bill of sale lists associated equipment. A second Exhibit A to the bill of sale describes a payment schedule directing the money to Mr. Wallace.

47. On information and belief, the second Exhibit A (the one describing the payment schedule) was not attached to any original bill of sale received by South Coast Express, Inc. at the purchase of the John Wanamaker (South Coast Express, Inc. has since received a copy of such an Exhibit A through the course of litigation).

48. The second Exhibit A to the bill of sale (the one which was not, according to Mr. Walker, attached to the bill of sale which he received) called for the payment of $20,000.00 to Mr. Dunfey and thereafter $40,000.00 to Mr. Wallace.

49. On information and belief, in fact, Mr. Wallace received approximately $54,000.00 of the cash from the sale of the John Wanamaker.

50. On information and belief, Mr. Walker, the buyer, believed that he was paying Mr. Wallace in a capacity as "agent" on behalf of Mr. Dunfey.

51. Some time after approximately December 1, 2002, the Rockingham County Superior Court ordered Dunfey Marine Enterprises, Inc. to pay the proceeds of the sale of the John Wanamaker into Court.

52. Mr. Dunfey, although he was aware of the order, did not cause the proceeds of the sale of the John Wanamaker to be paid into Court. Instead, the proceeds were paid, allegedly, to Mr. Wallace.

53. A portion of the proceeds were paid to Mr. Wallace by check dated December 31, 2002. The check dated December 31, 2002 was delivered to Mr. Wallace on or about the beginning of December, 2002.

54. Mr. Dunfey took no steps to cause payment upon that check to be stopped so as to comply with the Rockingham County Superior Court's order.

55. As a result of the transactions associated with Dunfey Marine Enterprises, Inc., and Mr. Dunfey's handling of the monies arising from the sale of the John Wanamaker, the Rockingham County Superior Court has concluded that the corporate entity known as Dunfey Marine Enterprises, Inc. should be disregarded as a fiction that has perpetrated a fraud on creditors, and has imposed liability for the obligation owing to the Landlord directly upon Mr. Dunfey.

56. Mr. Dunfey maintains no records whatsoever with respect to the payment to Mr. Wallace arising from the sale of the John Wanamaker.

57. This bankruptcy petition was filed only after the Superior Court found Mr. Dunfey in contempt in connection with the delivery of the proceeds of the sale of the John Wanamaker to Bobby Wallace, and caused him to be incarcerated.

**COUNT I**

58. Each of the foregoing allegations are hereby realleged and incorporated.

59. The transfer by Mr. Dunfey to Mr. Wallace of the $25,000.00 received from Andrew Cole as a down payment upon the sale of the business of Portsmouth Harbor Cruises, Inc. was a transfer of property of the Estate.

60. The transfer of the $25,000.00 from Mr. Dunfey to Mr. Wallace was a transfer with the actual intent to hinder, delay or defraud creditors. The purpose and intent of the transfer being to put the $25,000.00 beyond the reach of potentially attaching creditors so as to be available to manage the affairs of Mr. Dunfey.

61. The transfer of the $25,000.00 from Mr. Dunfey to Mr. Wallace was made on or within one year before the date of the filing of this bankruptcy petition.

**WHEREFORE**, the Trustee objects to the grant of a discharge to Mr. Dunfey under 11 USC §727(a)(2).

## COUNT II

62. Each of the foregoing allegations are hereby realleged and incorporated.

63. The transfer of the $25,000.00 from Mr. Dunfey to Mr. Wallace was made, on information and belief, as a part of a scheme between Mr. Wallace and Mr. Dunfey to conceal the ownership of the $25,000.00 from a creditor of Mr. Dunfey's: Key Bank.

64. The transfer from Mr. Dunfey to Mr. Wallace was done with the intent to hinder, delay or defraud a creditor of the Estate, Key Bank.

65. The transfer was within one year of the date of the bankruptcy petition in this case.

**WHEREFORE**, the Trustee objects to the discharge of Mr. Dunfey under 11 USC §727(a)(2).

### COUNT III

66. Each of the foregoing allegations are hereby realleged and incorporated.

67. The transfer of the sum of $89,100.00 in cash from Mr. Dunfey to Mr. Wallace on or about July 24, 2002 was a transfer that resulted in a loss of assets to this Estate which the Debtor has failed to satisfactorily explain.

**WHEREFORE**, the Trustee objects to the grant of a discharge to Mr. Dunfey under 11 USC §727(a)(5).

### COUNT IV

68. In the alternative to the foregoing count, the Trustee says as follows:

69. All of the foregoing allegations are hereby realleged and incorporated except the foregoing count.

70. To the extent that the Debtor has explained the transfer of the sum of $89,100.00 from Mr. Dunfey to Mr. Wallace in cash on July 24, 2002, the explanation appears to be one of two alternative explanations neither of which are satisfactory. The first of which is that the $89,100.00 was paid to Mr. Wallace so that Mr. Wallace might manage the affairs of Mr. Dunfey.

71. The foregoing explanation of the transfer of the sum of $89,100.00 to Mr. Wallace is an explanation that says, in essence, that the money was to be placed beyond the attachment reach of Mr. Dunfey's creditors, so that Mr. Wallace might deal with the money on Mr. Dunfey's behalf.

72.     The transfer of $89,100.00 from Mr. Dunfey to Mr. Wallace to place the monies beyond the reach of creditors is a transfer with the actual intent to hinder, delay or defraud the creditors.

**WHEREFORE**, the Trustee demands that the discharge be denied pursuant to 11 USC §727(a)(2).

## COUNT V

73.     In the alternative to the foregoing two counts, the Trustee says as follows:

74.     Each of the foregoing allegations are hereby realleged and incorporated except the foregoing two counts.

75.     The alternative explanation that Mr. Dunfey has proposed is that the transfer from Mr. Dunfey to Mr. Wallace was because Mr. Wallace was extorting money from Mr. Dunfey.

76.     Even if it were true that Mr. Wallace was extorting money from Mr. Dunfey, it remains the case that Mr. Dunfey participated in the scheme which he appears to allege was hatched by Mr. Wallace that resulted in the liquidation of several hundred thousand dollars of Mr. Dunfey's assets and payments of those monies to no person other than Mr. Wallace.

77.     Therefore, Mr. Dunfey knew that the $89,100.00 being paid to Mr. Wallace would have the actual effect of hindering, delaying or defrauding creditors.

78.     Further, the transfer, even if not "voluntary," was a transfer which Mr. Dunfey permitted and that he knew and therefore intended would have the actual effect of hindering, delaying and defrauding other creditors of the Estate.

**WHEREFORE**, the Trustee objects to the grant of a discharge to Mr. Dunfey pursuant to 11 USC §727(a)(2).

## COUNT VI

79. Each of the foregoing allegations are hereby realleged and incorporated.

80. Mr. Dunfey has failed to maintain any records with respect to either obligations owing to Mr. Wallace, or payments made to Mr. Wallace in 2002.

81. The Trustee objects to the grant of a discharge on the grounds that the Debtor has concealed, destroyed, falsified or failed to keep or preserve recorded information including books, documents, records and papers from which the Debtor's financial condition or business transactions might be ascertained pursuant to 11 USC §727(a)(3).

82. The Trustee says that the failure to maintain any records was not justified under all the circumstances of the case.

83. Mr. Dunfey appears to have been nothing other than a willing participant in this scheme by Mr. Wallace, a scheme that he alleges Mr. Wallace engaged in to defraud Mr. Dunfey's other creditors.

**WHEREFORE,** the Trustee objects to the grant of a discharge to Mr. Dunfey pursuant to 11 USC §727(a)(3).

## COUNT VII

84. Each of the foregoing allegations are hereby realleged and incorporated.

85. The inconsistent record keeping by Mr. Dunfey with respect to the ownership of the John Wanamaker vessel, including the $1.00 lease, the treatment of

the vessel on his tax returns, and the representations made in the lease agreement with the Landlord with respect to ownership of the vessel, constitutes failure to keep and preserve recorded information including books, documents, records and papers from which the Debtor's financial condition or business transactions might be determined.

**WHEREFORE**, the Trustee objects to the issuance of a discharge pursuant to 11 USC §727(a)(3).

### COUNT VIII

86. Each of the foregoing allegations are hereby realleged and incorporated.

87. The use of a $1.00 lease to lease the vessel from Mr. Dunfey to Dunfey Marine Enterprises, Inc. had the purpose and effect of hiding the ownership of Mr. Dunfey of and in the vessel, and of concealing his ownership of and in the vessel. The concealment continued during the year prior to the bankruptcy petition.

88. The Debtor used the $1.00 lease to hinder, delay or defraud at least one creditor, that being the Landlord.

89. The Debtor therefore with the intent to hinder, delay or defraud a creditor, concealed his ownership in the vessel within one year before the date of the filing of the bankruptcy petition, and the Trustee therefore objects to discharge under 11 USC §727(a)(2).

**WHEREFORE,** the Trustee objects to the grant of a discharge pursuant to 11 USC §727(a)(2).

### COUNT IX

90. Each of the foregoing allegations are hereby realleged and incorporated.

91. The agreement by which Mr. Dunfey caused a substantial portion of the proceeds from the sale of the John Wanamaker to be paid directly to Bobby Wallace was an agreement made with the actual intent to hinder, delay or defraud a creditor: the Landlord.

**WHEREFORE**, the Trustee objects to discharge pursuant to 11 USC §727(a)(2).

## COUNT X

92. Each of the foregoing allegations are hereby realleged and incorporated.

93. The Debtor has failed to satisfactorily explain the loss of the proceeds from the sale of the John Wanamaker.

**WHEREFORE**, the Trustee objects to the grant of a discharge under 11 USC §727(a)(5).

## COUNT XI

94. Each of the foregoing allegations are hereby realleged and incorporated.

95. The Debtor has maintained no records with respect to the dealing between himself and Mr. Wallace with respect to the proceeds of the sale of the John Wanamaker.

**WHEREFORE**, the Trustee objects to the grant of a discharge to Mr. Dunfey pursuant to 11 USC §727(a)(3), the failure not being justified under all the circumstances of this case.

## COUNT XII

96. Each of the foregoing allegations are hereby realleged and incorporated.

97. By his treatment of the funds from the sale of the John Wanamaker, by his

failure to maintain the corporate existence of Dunfey Marine Enterprises, Inc., and by each of the other facts found by the Rockingham County Superior Court in its order adjudicating him liable for the debts of Dunfey Marine Enterprises, Inc., the Debtor engaged in conduct with the actual intent to hinder, delay or defraud a creditor.

**WHEREFORE**, the Trustee objects to the grant of a discharge pursuant to 11 USC §727(a)(2).

Respectfully submitted,
MICHAEL S. ASKENAIZER, TRUSTEE

By his Attorneys
FORD & WEAVER, P.A.

Dated:  December 23, 2003            /s/ Edmond J. Ford
Edmond J. Ford, Esquire (BNH #01217)
10 Pleasant Street, Ste. 400
Portsmouth, NH  03801
(603) 433-2002 Telephone
(603) 433-2122 Facsimile
eford@fordandweaver.com


### CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2003 a copy of the foregoing has been forwarded to the following:

Michael S. Askenaizer, Esquire            Geraldine L. Karonis
Law Offices of Michael S. Askenaizer      Assistant United States Trustee
60 Main Street                            66 Hanover Street, Suite 302
Nashua, NH 03060                          Manchester, NH 03101

| | |
|---|---|
| Peter V. Doyle, Esquire<br>SHAINES & MCEACHERN, P.A.<br>25 Maplewood Avenue<br>P.O. Box 360<br>Portsmouth, NH 03802-0360 | Walter J. Dunfey, II<br>POB 664<br>Portsmouth, NH 03802-0664 |

                                                                                                                                         /s/ *Edmond J. Ford*
                                                                                                                                         Edmond J. Ford

F:\WPDATA\Ed\1808-016\Adv. Askenaizer v Dunfey\complaint.wpd